# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FRANK JAMES HORTON,

        Defendant-Appellant.

UNPUBLISHED
November 16, 2017

No. 332972
Wayne Circuit Court
LC No. 15-008964-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALBERT MAURICE-EDWARD JACKSON,

        Defendant-Appellant.

No. 333318
Wayne Circuit Court
LC No. 15-008964-01-FC

---

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Defendants Frank James Horton and Albert Maurice-Edward Jackson were tried jointly, before a single jury. The jury convicted both defendants of armed robbery, MCL 750.529, and also convicted defendant Horton of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant Horton as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 13 to 25 years for his robbery conviction and two to five years for the felon-in-possession conviction, to be served consecutive to a five-year term of imprisonment for the felony-firearm conviction. Defendant Jackson received a sentence of 12 to 25 years in prison for his armed robbery conviction. Defendant Horton appeals as of right in

-1-

Docket No. 332972, and defendant Jackson appeals as of right in Docket No. 333318.[1]  We affirm in both appeals.

## I.  BASIC FACTS

Defendants were convicted of robbing Terry Moorer on May 18, 2015.  Moorer was a friend of Ken Anderson.  Through Anderson, Moorer became acquainted with both defendants, who lived or hung out at a house down the street from Anderson.  However, Moorer knew the defendants only by their nicknames, "Black Chris" (defendant Horton) and "Boo Nanny" (defendant Jackson).  On the day of the offense, Moorer and Anderson were together in Moorer's vehicle, and they picked up both defendants.  Moorer then drove to a nearby liquor store to buy cigarillos to make "blunts," i.e., marijuana cigars.  Moorer parked at the store and waited in the car with "Black Chris" while Anderson and "Boo Nanny" went inside.  Moorer testified that while they were alone, Black Chris pulled a gun on him and held him by his shirt.  Boo Nanny then returned to the car armed with a gun and stole Moorer's personal possessions.  Moorer was able to escape and the two defendants ran away.  Moorer went inside the store and a clerk called the police.  Moorer later identified defendant Horton as Black Chris, and identified defendant Jackson as Boo Nanny.

## II.  IDENTIFICATION TESTIMONY

Defendant Horton argues on appeal that his right to due process was violated by the use of a one-photo identification procedure.  Defendant Jackson raises a similar claim in a pro se supplemental brief, which he filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 ("Standard 4 brief").  We reject these claims of error.

Before trial, defendant Horton challenged Moorer's identification testimony, asserting that it was based on an unduly suggestive identification procedure.  After conducting an evidentiary hearing, the trial court determined that Moorer's identification testimony was admissible.  To the extent that defendant Horton now challenges that ruling, this issue is preserved.  *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007).  However, to the extent that defendant Horton argues that Moorer's identification testimony was inadmissible in light of new information that was brought out at trial, because Horton did not renew his motion to suppress or object to Moorer's testimony at trial, the issue is unpreserved.  Defendant Jackson did not challenge Moorer's identification testimony either before or after trial.  Therefore, defendant Jackson's appellate claim is also unpreserved.

A trial court's ruling on the admission of identification evidence is reviewed on appeal for clear error, which "exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993) (opinion by GRIFFIN, J).  However, we review unpreserved claims of error regarding

---

[1] This Court consolidated these appeals "to advance the efficient administration of the appellate process." *People v Horton; People v Jackson*, unpublished order of the Court of Appeals, entered December 7, 2016 (Docket Nos. 332972, 333318).

identification procedures for plain error affecting the defendant's substantial rights. *People v McCray*, 245 Mich App 631, 637-638; 630 NW2d 633 (2001). Put another way, a defendant must demonstrate the existence of a clear or obvious error that affected substantial rights, i.e., that impacted the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355-356; 662 NW2d 376 (2003).

In *People v Williams*, 244 Mich App 533, 542-543; 624 NW2d 575 (2001), this Court identified the general rules regarding suggestive identification procedures as follows:

> An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process. In order to challenge an identification on the basis of lack of due process, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. If the trial court finds the procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure. [Citations and quotation marks omitted.]

At the evidentiary hearing, Moorer testified that he knew both defendants before the offense, but knew them only by their nicknames—Black Chris and Boo Nanny. He explained that, after the offense, he went to the police station and looked through hundreds of photographs until he found a photo of the person he knew as Black Chris. That person's real name was Frank Horton. The trial court ruled that "there was nothing . . . unduly suggestive about the identification process." While defendant Horton challenges that ruling, he does so on the basis of evidence subsequently offered at trial regarding the identification procedure. However, this Court's review of the trial court's ruling denying Horton's motion to suppress is limited to the information known to the trial court when it denied the motion. See *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999) (recognizing that an appellate court must "review the information known to the trial court at the time it denied defendants' motions to suppress the evidence.") Because there was nothing suggestive about having Moorer look through various photographs of different people, Horton has not established that the trial court erred in denying his motion to suppress the pretrial identification.

The evidence at trial was different. Moorer testified at trial that he looked through hundreds of photographs until he found one that he recognized as Black Chris, but the officer in charge, Michael Panackia, testified that Moorer never found Black Chris's photograph in the book he looked through. Instead, Panackia determined, through independent means, that Horton matched Moorer's description of Black Chris, and Moorer subsequently confirmed Horton's identity as Black Chris after viewing a photograph of Horton. Even if we were to credit this version of events, plain error has not been established. As the prosecution points out, where the victim is already familiar with the defendant and identifies him by a nickname, the use of a single photograph to confirm his identity does not create a substantial likelihood of misidentification and will not result in a violation of the defendant's due process rights. *People v Woolfolk*, 304 Mich App 450, 457-458; 848 NW2d 169 (2014), aff'd 497 Mich 23 (2014).

Defendant Jackson's claim of error fails for much of the same reasons. First, because defendant Jackson did not challenge Moorer's identification testimony in the trial court, there was never a factual determination as to how Jackson was identified. There was evidence that Moorer identified Jackson by going through a book of photographs, that Moorer picked him out of a photographic lineup of six individuals, and that Moorer was shown a single photograph of Jackson and identified the subject as Boo Nanny. Only the third scenario raises a question of possible suggestiveness. Even assuming that the third scenario is correct, however, it is not a basis for suppressing Moorer's identification testimony in light of the evidence that Moorer was already familiar with Jackson, but knew him only by his nickname, and that the photographic procedure was intended to only confirm Jackson's identity as the person who Moorer already knew as Boo Nanny.

### III. ANDERSON'S ABSENCE AT TRIAL

Defendant Horton argues that he was denied a fair trial by the prosecution's failure to produce Ken Anderson as a witness at trial, without a showing that the prosecution exercised due diligence in attempting to secure Anderson's presence. Defendant Horton also argues that the trial court erred by failing to give a missing witness instruction. Defendant Jackson similarly argues that his trial attorney was ineffective for not requesting a due-diligence hearing or the missing witness instruction in relation to Anderson. In his Standard 4 brief, defendant Jackson also argues that defense counsel was ineffective for failing to call Anderson as a witness.

Defendants did not object to Anderson's absence at trial, and did not request a missing witness instruction, leaving these issues unpreserved. *Metamora Water Serv, Inc*, 276 Mich App at 382. Accordingly, our review of these claims is limited to plain error affecting defendants' substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Regarding Jackson's claim of ineffective assistance of counsel, because Jackson did not raise such a claim in the trial court, "our review is limited to mistakes apparent from the record[,]" and we must determine de novo as a matter of constitutional law whether any alleged mistakes on the part of trial counsel amount to ineffective assistance of counsel. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002); *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). To establish a claim of ineffective assistance of counsel, a defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007) (citation omitted).

### A. PROSECUTION'S DUTY TO PRODUCE ANDERSON

At one time, MCL 767.40 was interpreted in a manner that required the prosecution to employ "due diligence" to "endorse and produce all res gestae witnesses." *People v Burwick*, 450 Mich 281, 287; 537 NW2d 813 (1995). 1986 PA 46 amended the law, which now provides that the prosecution must provide the names of known res gestae witnesses with the information. MCL 767.40a(1). Moreover, at least 30 days before trial, the prosecution must give the defendant a list of the witnesses to be produced at trial. MCL 767.40a(3). The prosecution may delete a person from the list of witnesses to be called "at any time upon leave of the court and for good cause shown or by stipulation of the parties." MCL 767.40a(4). Upon a defendant's request, the prosecution must provide "reasonable assistance, including investigative assistance,

as may be necessary to locate and serve process upon a witness." MCL 767.40a(5). In light of this statutory amendment, "[t]he prosecutor's only burden of production is to produce those witnesses it intends to call, a list that can be amended on good cause shown, *at any time*," and amendment is not conditioned on a showing of prior due diligence. *Burwick*, 450 Mich at 292-293 (emphasis in original). This Court recently explained that where a defendant has not agreed to the prosecution removing a witness from its witness list, the prosecution must show good cause for deleting an endorsed witness. *People v Everett*, 318 Mich App 511, 518; 899 NW2d 94 (2017). If the prosecution does not request permission to delete the witness from the witness list, it must exercise due diligence to produce the witness for trial. *Id*. at 518-519. The missing witness instruction "may be appropriate" if the prosecution "fails to secure the presence at trial of a listed witness who has not been properly excused." *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003).

The parties dispute whether Anderson was an endorsed witness, and the record does not contain any witness lists. During jury voir dire, the prosecution identified Anderson as one of its "potential witnesses," but the record does not indicate whether the prosecution named Anderson as a witness or whether it endorsed Anderson as a witness to be called at trial. If Anderson was not endorsed as a witness to be called at trial, the prosecution had no obligation to produce him and defendants would not be entitled to a missing witness instruction. Because there is nothing in the record to show that Anderson was endorsed as a witness to be called at trial, and defendants have not identified any factual support for their assertion that Anderson was an endorsed res gestae witness, defendants have not established that the failure to produce Anderson constituted plain error. *Carines*, 460 Mich at 763. Likewise, because defendants did not raise this issue below, the trial court did not explore what attempts, if any, were made to produce Anderson for trial. Thus, we cannot conclude that the prosecution failed to exercise due diligence to secure Anderson's presence at trial. Under these circumstances, defendants have also failed to show that the trial court's failure to give a missing witness instruction constituted plain error, particularly in the absence of a request for the instruction. *Id*.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Jackson's claim that counsel was ineffective for failing to request a due-diligence hearing or a missing witness instruction is predicated on the assumption that Anderson was an endorsed witness who was required to be produced at trial. A "defendant has the burden of establishing the factual predicate of his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant Jackson concedes that he does not know whether Anderson was an endorsed witness to be called at trial. As discussed earlier, the record shows only that Anderson was identified as a potential witness, not that he was an endorsed witness. Absent an affirmative showing that Anderson indeed was an endorsed witness, defendant Jackson cannot establish that the prosecution had an obligation to produce him or that defense counsel had a basis for requesting a due-diligence hearing or the missing witness instruction. Accordingly, defendant Jackson has failed to establish the factual predicate for these claims.

Defendant Jackson alternatively argues that defense counsel was ineffective for not calling Anderson as a defense witness. The decision whether to call witnesses is a matter of trial strategy and "[t]his Court will not substitute its judgment for that of counsel regarding matters of

trial strategy[.]" *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999) (citation omitted). However, a strategy must be sound, and "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Ineffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v Julian*, 171 Mich App 153, 159; 429 NW2d 615 (1988). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990) (citation omitted).

The testimony at trial indicated that Anderson went to the store with Moorer and defendants before the offense. He entered the store with Jackson and never went back out to the car until sometime after the robbery. The record does not indicate what testimony Anderson might have offered, apart from the fact that he accused Moorer of "trying to sell weed." That Moorer may have planned to sell his marijuana to defendants rather than share it with them does not make it more likely that the robbery did not occur as Moorer described. Therefore, the record does not show that Anderson's testimony would have provided Jackson with a substantial defense, and thus does not show that trial counsel's performance was deficient in declining to call him to testify.

## IV. ADMISSION OF EVIDENCE

Defendant Horton challenges the admissibility of various statements made by Anderson. Both Moorer and a police officer testified to remarks made by Anderson at the crime scene. Horton contends that Anderson's remarks were not relevant, they constituted inadmissible hearsay, and their admission violated his constitutional right of confrontation. Although Horton raised a hearsay objection at trial, he did not object below on relevancy or confrontation grounds. Because "[a]n objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground[,]" only the hearsay aspect of this issue has been preserved. *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996).

A preserved issue regarding the admission of evidence is reviewed for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). If the decision involves a preliminary question of law "regarding admissibility based on construction of a constitutional provision, rule of evidence, court rule, or statute," the issue is reviewed de novo. *People v Jambor (On Remand)*, 273 Mich App 477, 481; 729 NW2d 569 (2007). An unpreserved issue regarding admission of evidence is reviewed for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764.

The witnesses testified that Anderson said, "I can't believe you called the police," "he don't want to have nothing to do with this situation," "he don't want to have nothing to do with the police," and "he doesn't want to make a report." They also testified that Anderson told Moorer not to talk to or cooperate with the police and told Moorer "you were trying to sell weed." Preliminarily, many of these statements clearly do not qualify as hearsay because they do not involve an assertion offered to prove the truth of the matter asserted. MRE 801(a) and (c); *People v Jones (On Rehearing, After Remand)*, 228 Mich App 191, 204-205; 579 NW2d 82 (1998), mod on other grounds 458 Mich 862 (1998). Further, the statements were probative of Moorer's credibility and they provided context for Moorer's responses to police questioning and

provided a possible explanation for Moorer's failure to mention particular details about the robbers or the robbery. Therefore, defendant Horton has not shown a plain error with respect to relevancy. MRE 401.[2] In addition, nothing Anderson said appears to be testimonial in nature. See *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006) (recognizing in the context of police interrogation that a statement is testimonial if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.") Anderson did not say anything about helping defendants plan or commit the robbery, and while Moorer testified that he suspected that Anderson was involved, that suspicion was not based on anything Anderson said; Moorer attributed his suspicion to the fact that the events surrounding the robbery began after Anderson left Moorer's vehicle. Thus, Horton has not shown a plain error with respect to his Confrontation Clause claim.

Further, even assuming that some of the testimony should not have been admitted, any error would not justify appellate relief. A preserved nonconstitutional error regarding the admission of evidence is presumed to be harmless. *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999). The error justifies reversal only if "it is more probable than not that the error was outcome determinative." *Id*. An error is not outcome determinative unless it undermines the reliability of the verdict "in light of the weight and strength of the untainted evidence." *People v Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001), quoting *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). Similarly, unpreserved errors do not warrant relief unless they are outcome determinative. *People v Houston*, 261 Mich App 463, 466; 683 NW2d 192 (2004), aff'd 473 Mich 399 (2005). Because nothing Anderson said directly or indirectly implicated defendant Horton in the alleged robbery, admission of the challenged testimony could not have affected the jury's verdict.

## V. PROSECUTION'S CONDUCT

Defendant Jackson argues that the prosecution made improper remarks during closing argument and that his trial counsel was ineffective for failing to object. Because there was no objection to the prosecution's conduct at trial, the preliminary issue of prosecutorial misconduct is unpreserved and we review that claim for plain error affecting Jackson's substantial rights. *Carines*, 460 Mich at 763-764; *People v Goodin*, 257 Mich App 425, 431; 668 NW2d 392 (2003).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted)." *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003) (citation omitted). "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002) (citation omitted). This Court reviews claims of prosecutorial misconduct on a case-by-case basis, *id*., examining the remarks in context to determine "whether the defendant was denied a fair and impartial trial." *Goodin*, 257 Mich App at 432 (citation omitted). The prosecution's

---

[2] MRE 401 provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

comments are evaluated in light of the defendant's arguments "and the relationship they bear to the evidence admitted at trial. *Rodriguez*, 251 Mich App at 30 (citation omitted).

During closing argument, the prosecution argued that the police and investigator reports did not contain every single detail about the crime and the police investigation because their limited purposes are to refresh the officers' memories and to allow the prosecution to determine if there is probable cause to charge the offender. That argument was not improper because it was supported by the testimony at trial and reasonable inferences drawn therefrom. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Further, it was responsive to defense counsel's arguments. *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996). In addition, the trial court instructed the jury that it must decide the case based only on "the evidence that has been properly admitted in the case," and the court explained what is and is not evidence. The trial court instructed the jury that "many things are not evidence," such as "[t]he lawyers' statement and arguments," which "are only meant to help you understand the evidence and each side's legal theories," and the trial court advised the jury that it "should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." These instructions were sufficient to protect defendant Jackson's substantial rights. See *People v Dobek*, 274 Mich App 58, 66 n 3; 732 NW2d 546 (2007).

The prosecution also did not improperly vouch for the credibility of the witnesses. To vouch for a witness's credibility is to give it a "stamp of approval," *People v Bennett*, 290 Mich App 465, 479; 802 NW2d 627 (2010), or suggest that one has "some special knowledge concerning a witness's truthfulness." *Bahoda*, 448 Mich at 276. Prohibited comments are those that invite the jury to accept the prosecution's judgment that the defendant is guilty rather than to determine the issue for itself. *People v Whitfield*, 214 Mich App 348, 352-353; 543 NW2d 347 (1995). At most, the prosecution tacitly suggested that the witnesses' testimony was credible even though not every detail of the offense and ensuing police investigation was mentioned in the reports, and "a prosecutor may comment on his or her own witnesses' credibility, especially when credibility is at issue." *Bennett*, 290 Mich App at 478. Therefore, the prosecution's comments were not improper. Because defendant Jackson has not established that the prosecution's arguments were improper, his related ineffective assistance of counsel claim must fail. "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Jackson raises additional claims of ineffective assistance of counsel in his Standard 4 brief. Because these claims were not raised in an appropriate motion in the trial court, our review of the claims "is limited to mistakes apparent from the record." *Lane*, 308 Mich App at 68.

Jackson first asserts that counsel was ineffective for failing to present evidence of text messages that Moorer allegedly sent to members of Jackson's family after the offense. The record discloses that, at a pretrial conference, the parties discussed that an unspecified witness had allegedly sent a text message to a member of Jackson's family. Defense counsel informed the trial court that the issue had been "resolved," but agreed to have an associate deliver the

subject's cellular telephone to the police for further investigation. The record does not reveal the results of that investigation and the issue was not mentioned again on the record.

Counsel has a duty to conduct a reasonable investigation, *Trakhtenberg*, 493 Mich at 52, and may be deemed ineffective where a failure to do so results "in counsel's ignorance of valuable evidence that would have substantially benefited the" defense. *People v Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990). The decision "regarding what evidence to present" is a matter of trial strategy. *Rockey*, 237 Mich App at 76. Although the record shows that trial counsel did not present any text messages at trial, or question witnesses about them, it does indicate that trial counsel undertook to investigate the matter. However, without any additional information regarding the results of that investigation that can be gleaned from the record, there is no basis for us to conclude that trial counsel performed deficiently by not presenting any evidence related to this matter, or that Jackson was prejudiced by the decision not to present such evidence.

Jackson next complains that trial counsel was ineffective for not objecting to the prosecution's request for a mutual sequestration order. Subject to certain exceptions, a trial court may exclude witnesses "so that they cannot hear the testimony of other witnesses[.]" MRE 615. "The purposes of sequestering a witness are to prevent him from coloring his testimony to conform with the testimony of another and to aid in detecting testimony that is less than candid." *People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008) (quotation marks and citations omitted). Reasonable requests to sequester witnesses should generally be granted. *People v Hayden*, 125 Mich App 650, 659; 337 NW2d 258 (1983). Because sequestration serves a legitimate and beneficial function at trial and should generally be granted, the record does not support a finding that trial counsel's performance was deficient by agreeing to the prosecution's motion.

Jackson also complains about trial counsel's failure to call the store clerk as a witness. As indicated earlier, the decision whether to call a witness is a matter of trial strategy, *Rockey*, 237 Mich App at 76, and ineffective assistance of counsel may be established by the failure to call a witness only if the failure deprives the defendant of a substantial defense (i.e., one that might have made a difference in the outcome of the trial). *Kelly*, 186 Mich App at 526; *Julian*, 171 Mich App at 159. The record shows that a clerk was working in the store when Anderson and Jackson entered. It does not show that the clerk had any information about what transpired in the parking lot between the time Jackson left the store and Moorer entered the store after the offense, or what testimony the clerk could have offered if called at trial. Because there has been no showing that the clerk's testimony could have provided Jackson with a substantial defense, Jackson's claim that counsel was ineffective for failing to call the clerk as a witness cannot succeed.

Jackson also asserts that trial counsel was unable to effectively represent him at trial because of family issues in counsel's personal life. It is well-settled that "[a]n attorney is obligated to use reasonable skill, care, discretion and judgment in representing a client, assuming the position of highest trust and confidence." *Beattie v Firnschild*, 152 Mich App 785, 790; 394 NW2d 107 (1986) (citation omitted). A lawyer cannot represent a client if her physical or mental condition materially impairs her ability to represent the client. MRPC 1.16(a)(2). In this case, the record discloses only that trial counsel had "family issues" that prevented her from

attending the originally scheduled sentencing hearing on April 7, 2016. Counsel attended the adjourned sentencing hearing on April 12, 2016. There is nothing in the record to show that these family issues existed at the time of trial, or that they impaired counsel's ability to represent Jackson. To the contrary, the record shows that counsel cross-examined each of the prosecution's witnesses and offered a closing argument in which she attacked both Moorer's credibility and the quality of the police investigation. The record does not support a finding that counsel was unable to meet her professional obligations to Jackson because of personal matters.

Affirmed.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher