PEOPLE v FARROW

Docket No. 114252. Decided October 12, 1999. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of grant-
ing leave, reversed the judgment of the Court of Appeals and rein-
stated the order of the circuit court.

Scott Farrow was charged in the Oakland Circuit Court with posses-
sion of marijuana with intent to deliver, on the basis of the seizure
of marijuana from his residence. He moved to suppress the evi-
dence, claiming that it was the product of an illegal search and
seizure, and the court, Rudy J. Nichols, J., after conducting an evi-
dentiary hearing, ordered the evidence suppressed. The Court of
Appeals, GRIBBS, P.J., and SAAD and P. H. CHAMBERLAIN, JJ., reversed,
in an unpublished memorandum opinion, ruling that the evidence
showed that the defendant had consented to the search (Docket
No. 211127). The defendant seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

The circuit court did not clearly err in finding that there was no
valid consent.

1. Where a person permits a search in the face of an assertion by
the police that they have a warrant, no consent can support the
validity of the search. A prosecutor, in seeking to rely on consent
to justify the lawfulness of a search, has the burden of proving that
consent was freely and voluntarily given. The burden cannot be dis-
charged by showing no more than acquiescence to a claim of law-
ful authority. A search conducted in reliance upon a warrant can-
not later be justified on the basis of consent if its turns out that the
warrant was invalid. The result can be no different when the state
fails to show that there was any warrant at all.

2. In this case, the officers did not tell the defendant that they
had a search warrant. Rather, one officer displayed a search war-
rant form in his folder when he confronted the defendant. The cir-
cuit court found believable the defendant's testimony that he
believed the officers had a warrant and allowed them to enter for
that reason. Such factual determinations by trial judges are to be
sustained unless clearly erroneous. In reversing the circuit court's
decision, the Court of Appeals overstepped its review function, and

in effect made independent findings, substituting its judgment for that of the circuit court.

Reversed.

*Cyril C. Hall* for the defendant.

PER CURIAM. The defendant was charged with possession of marijuana with intent to deliver,[1] on the basis of the seizure of marijuana from his residence. He moved to suppress the evidence, claiming that it was the product of an illegal search and seizure. The circuit judge conducted an evidentiary hearing and ordered the evidence suppressed. However, the Court of Appeals reversed, ruling that the evidence showed that the defendant consented to the search. We conclude that the circuit judge did not clearly err in finding that there was no valid consent, and reverse.

I

On the evening of September 25, 1997, police seized a quantity of marijuana from the defendant's Pontiac home. As a result, he was charged with possession of marijuana with intent to deliver. He moved to suppress the evidence, and an evidentiary hearing was held in the circuit court. Two police officers, Detectives Froehlich and Liggins, and the defendant testified.

The defendant testified that he met Froehlich at the door. Froehlich was holding a black plastic or leather folder, which he opened in order to get out his business card. He held the folder in an open position so that the defendant could see what was inside. Inside the folder was the top part of a form bearing the label

---

[1] MCL 333.7401(2)(d)(iii); MSA 14.15(7401)(2)(d)(iii).

"Oakland County" and "Search Warrant." The bottom half was obscured by the flap on the folder.

The officers then asked if they could enter, at which point the defendant stepped back. The officers came in and told the defendant that his friends should probably leave, which they did. The officers then asked if the defendant had any marijuana in the house. The defendant went to the freezer and got a bag of marijuana, which he gave to the officers.

The defendant testified that he believed the officers were there under a search warrant, that he did not have the right to refuse the officers' entry, and that refusal carried with it the possibility of his house being torn apart. He admitted that he did not see his name or address on the warrant and was not told that the warrant was for his home.

In his direct testimony, Froehlich said that he and the other officers went to the defendant's residence, and that he identified himself to the defendant with a business card and asked to talk with the defendant. The defendant asked some of his guests to leave and, after they did, Froehlich said he and Liggins were invited inside. Froehlich sat on the couch in the living room next to the defendant. Froehlich explained that they were there to investigate a marijuana complaint and asked if the defendant had marijuana in the house. At that point, the defendant got up, went to the kitchen, and got a quantity of marijuana out of the refrigerator, handing it to the officer.

On cross-examination, Froehlich testified to uncertainty about the use of the folder and warrant form:

> *Q.* And in terms of identifying yourself, you produced a card. Is that not accurate?
> *A.* Yes I did.

*Q.* And when you produced a card, you opened up your folder.

*A.* I may or may not have.

*Q.* Okay, and in your folder was a form that indicated Search Warrant, and it also had the sheriff's department insignia on it. Is that correct?

*A.* I don't recall.

*Q.* Okay. You do have a folder that you have Search Warrants in. Is that not correct?

*A.* I have a folder that is correct.

*Q.* And does it have Search Warrants contained therein?

*A.* On occasion it does.

*Q.* Okay, and in addition you opened that folder and retrieved a card though. Is that correct?

*A.* Yes I did.

*Q.* And during the period of time that you opened the folder, Mr. Farrow was standing right in front of you. Is that not true?

*A.* Yes he was.

Detective Liggins' testimony was consistent with that of Froehlich, though he provided fewer details.

II

The circuit judge initially rejected the prosecutor's argument that there was no search, and then turned to the question of consent. The judge found that the defendant allowed the officers to enter because of his view of the search warrant form, which he thought to be a lawful court order:

This Court also finds as a fact that Defendant allowed entry because of a blank Search Warrant that he saw and in compliance with what he reasonably believed to be a lawful order of the Court. This believability decision made by this Court is because Detective Froehlich in the testimony could

not recall if he had a Search Warrant or not on September 25.

Defendant's testimony on the other hand was concrete and uncontested that he saw a Search Warrant. Thus, anything that occurred after the Defendant saw the Warrant was effected by the display of the Warrant by the detective and Defendant's conclusions therefrom including his reasonable belief that there was a valid document to penetrate his home.

\* \* \*

. . . In *People* [*v Kaigler*, 368 Mich 281; 118 NW2d 406 (1962)], the Court there held that, "Consent must be proved by clear and positive testimony and be shown to have been made without duress, coercion, actual or implied. The prosecution must show consent is unequivocal, specific, freely and intelligently given."

In this case[,] the Court has found as a fact that Defendant was shown a blank Search Warrant by the officers and allowed entry into the home because Defendant reasonably concluded that the Search Warrant was for Defendant's home.

This Court cannot find that the consent made was made freely, voluntarily, intelligently, or even knowingly when the Defendant, as he testified in this case, had no prior contacts with the police and was shown a purportedly valid Search Warrant by detectives who asked him questions about illegal activity.

III

The prosecutor appealed, and the Court of Appeals reversed.[2] The Court accepted the trial judge's finding that a search occurred, but held that the finding that

---

[2] Unpublished memorandum opinion, issued February 19, 1999 (Docket No. 211127).

the defendant's consent was not valid was clearly erroneous. The Court of Appeals explained:

> Defendant admitted that the police did not tell him that they had a search warrant, and that the search warrant form he claimed to have observed did not contain his name or address. The instant case is distinguishable from the authority relied on by defendant below, *Bumper v North Carolina,* 391 US 543; 88 S Ct 1788; 20 L Ed 2d 797 (1968), in which entry was allowed and consent to search was given only after the police falsely represented that they had a search warrant. While valid consent cannot be found to exist if a person opens a door in response to a police command, *Bumper, supra,* 391 US at 548-550, defendant did not do so in this case. He readily admitted the officers to his residence. His expressed consent was unequivocal. *Kaigler, supra.* He demonstrated no fear, and at no time indicated that he was cooperating because he was afraid or because he thought that a warrant existed. Fear that is not manifested and that does not put the police on notice that consent is not freely given will not render a search invalid. *People v Waskowski,* 23 Mich App 60, 63; 178 NW2d 113 (1970).

The defendant has filed an application for leave to appeal to this Court.

IV

In *Bumper v North Carolina, supra,* the United States Supreme Court made clear that where a person "permits" a search in the face of an assertion by the police that they have a warrant, there is no consent that can support the validity of the search. The Court explained:

> The issue thus presented is whether a search can be justified as lawful on the basis of consent when that "consent" has been given only after the official conducting the search

has asserted that he possesses a warrant. We hold that there can be no consent under such circumstances.

When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.

When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent. [391 US 548-550.][3]

In this case, the officers did not tell the defendant that they had a search warrant. Rather, the defendant testified that Detective Froehlich displayed a search warrant form in his folder when he confronted the defendant. The defendant also testified that he believed the officers had a warrant and allowed them to enter for that reason. The circuit judge ultimately found that testimony believable, relying particularly on the specificity of the defendant's testimony by contrast to that of the officers. Such factual determinations by trial judges are to be sustained unless clearly erroneous. *People v Burrell,* 417 Mich 439, 448-449; 339 NW2d 403 (1983):

---

[3] In *Bumper,* the police apparently had procured a warrant, but the prosecutor unequivocally said that the state was not relying on the search warrant.

This Court will not disturb a trial court's ruling at a suppression hearing unless that ruling is found to be clearly erroneous. Resolution of facts about which there is conflicting testimony is a decision to be made initially by the trial court. The trial judge's resolution of a factual issue is entitled to deference. This is particularly true where a factual issue involves the credibility of the witnesses whose testimony is in conflict. *People v White*, 401 Mich 482; 257 NW2d 912 (1977). See *People v Dinsmore*, 103 Mich App 660; 303 NW2d 857 (1981).

Proper evaluation of defendants' claim obliges us to review the information known to the trial court at the time it denied defendants' motions to suppress the evidence. Since the claimed error here involves deprivation of a constitutional right, our resolution of the issue is "guided but not controlled by the trial judge's factual determination." *People v Smith*, 19 Mich App 359, 367-368; 172 NW2d 902 (1969). If, upon our review of the record, we do not possess a definite and firm conviction that the trial court made a mistake, we must affirm. *People v White, supra.*

In reversing the circuit judge's decision, the Court of Appeals overstepped its review function, and in effect made independent findings, substituting its judgment for that of the circuit judge. Had the circuit judge made findings like those of the Court of Appeals, such a decision might well have been supportable; however, there was sufficient support in the testimony for the circuit judge's decision that his finding that there was no valid consent was not clearly erroneous.

Accordingly, we reverse the judgment of the Court of Appeals and reinstate the circuit court's order suppressing the evidence seized as a result of the search.

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.