# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHRISTOPHER JEFFREY LEWIS,

      Defendant-Appellant.

UNPUBLISHED
November 13, 2014

No. 316289
St. Clair Circuit Court
LC No. 11-002176-FH

Before: WHITBECK, P.J., and FITZGERALD and MURRAY, JJ.

PER CURIAM.

Defendant, Christopher Jeffrey Lewis, appeals as of right his convictions, following a jury trial, of possessing methamphetamine or ecstasy,[1] delivering or manufacturing less than 50 grams of narcotics,[2] receiving and concealing a stolen firearm,[3] purchasing a pistol without a license,[4] two counts of maintaining a drug house,[5] and possessing a firearm during the commission of a felony (felony-firearm).[6] Lewis challenges the legality of his investigatory stop and the consent that he gave for officers to search his homes. We affirm.

## I. FACTS

### A. BACKGROUND FACTS

At Lewis's preliminary examination, Port Huron Police Officer James Gilbert testified that he is a member of the St. Clair County Drug Task Force and has extensive training in

---

[1] MCL 333.7403(2)(b)(*i*),

[2] MCL 333.7401(2)(a)(*iv*).

[3] MCL 750.535b.

[4] MCL 750.232a(1).

[5] MCL 333.7405(d).

[6] MCL 750.227b.

-1-

narcotic investigation. According to Officer Gilbert, the Task Force has received information about Lewis since 1994. On December 28, 2010, Officer Gilbert conducted surveillance on Lewis. He followed Lewis to Lewis's residence on Dove Road. After several hours, Lewis went to his residence on 15th Street.

A short time after Lewis arrived at 15th Street, a black Grand Prix registered to Terry Ashford, a person who Officer Gilbert knew as a drug dealer, arrived at Lewis's 15th Street home and stayed for less than 5 minutes. Shortly after the Grand Prix departed, Lewis drove to the home of Marvin Miller, another person that Officer Gilbert knew as a drug dealer, and stayed there for less than 5 minutes. Officer Gilbert observed Lewis make a few more short stops. Officer Gilbert thought that Lewis's actions indicated narcotics transactions. Officer Gilbert also noted that his vehicle's side windows were tinted. Officer Gilbert decided to stop Lewis's car.

Port Huron Police Officer Jeremy Young testified that he stopped Lewis's vehicle. According to Officer Young, after asking Lewis for his license, registration, and proof of insurance, he asked Lewis to step outside the vehicle. According to Officer Gilbert, Lewis had a concealed weapons permit and was known to carry a firearm. Officer Young patted Lewis down and found marijuana and cash, which he turned over to another officer. Deputy Matthew Pohl testified that Lewis stated that he had a medical marijuana card.

Deputy Pohl testified that he told Lewis that he detained him pursuant to the officers' investigation. When asked whether he had any guns, Lewis told officers that they could search his car for guns. Officer Gilbert testified that, during the stop, Lewis was detained in handcuffs and was not free to leave. According to Deputy Pohl, while Lewis was detained, he consented to allow officers to search his homes.

Officers found marijuana, Ecstasy, cocaine, and firearms in Lewis's homes. After officers found the narcotics, Lewis told Officer Gilbert that he had been dealing narcotics off and on for years. The trial court declined to suppress the evidence that officers obtained after stopping Lewis's vehicle. The trial court also determined that Lewis freely gave consent for officers to search his homes. Lewis appealed the trial court's denial of his motion to suppress the evidence.

Following a remand order from this Court,[7] the trial court held an evidentiary hearing. At the hearing, Deputy Pohl testified that he read Lewis *Miranda*[8] warnings and Lewis later consented to a search of his homes. Lewis signed a written consent form. According to Deputy Pohl, the atmosphere was relaxed and Lewis did not appear to be under duress. Lewis indicated that he understood his rights. Officer Gilbert testified that the interview was cordial and casual and that Lewis was handcuffed for officer safety.

---

[7] *People v Lewis*, unpublished order of the Court of Appeals, issued June 6, 2012 (Docket No. 307612).

[8] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

The trial court found that Deputy Pohl issued Lewis *Miranda* warnings about half an hour after the traffic stop after Lewis consented to searches of his home. The trial court found that Deputy Pohl and Officer Gilbert reviewed Lewis's *Miranda* warnings before Lewis made incriminating statements in the basement of one of his homes. The trial court concluded that Lewis's consent was valid and permitted testimony at trial regarding the evidence found in Lewis's homes.

## II. SEARCH AND SEIZURE

### A. STANDARD OF REVIEW

This Court reviews de novo whether police conduct violated the Fourth Amendment and reviews de novo a trial court's decision on a motion to suppress.[9] We review for clear error the trial court's findings of fact at a suppression hearing.[10] A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake.[11] We review de novo the trial court's ultimate decision on the motion.[12]

### B. LEGAL STANDARDS

"The Fourth Amendment is not a guarantee against all searches and seizures, but only against those that are unreasonable."[13] A person is seized when a reasonable person in his or her circumstances would believe that he or she is not free to leave.[14] Not every seizure amounts to an arrest.[15]

An officer may lawfully stop an individual when he or she has a reasonable suspicion that the person is committing a criminal offense.[16] "In order to effectuate a valid traffic stop, a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law."[17] The reasonableness of a traffic stop is a fact-specific

---

[9] *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009).

[10] *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999); *People v Chowdhury*, 285 Mich App 509, 514; 775 NW2d 845 (2009).

[11] *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

[12] *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).

[13] *People v Shabaz*, 424 Mich 42, 52; 378 NW2d 451 (1985).

[14] *United States v Mendenhall*, 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980).

[15] See *Shabaz*, 424 Mich at 52.

[16] *Terry v Ohio*, 392 US 1, 24; 88 S Ct 1868; 20 L Ed 2d 889 (1968); *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001).

[17] *Hyde*, 285 Mich App at 436 (quotation marks and citation omitted).

inquiry "that is measured by examining the totality of the circumstances."[18]  During a lawful traffic stop, police may detain the automobile and its occupants without cause to believe any occupant is involved in criminal activity.[19]  Police officers may place a suspect in handcuffs while searching for contraband.[20]

An officer may arrest a person if the officer "possesses information demonstrating probable cause to believe that an offense has occurred and that the defendant committed it."[21]  An officer may also arrest a person when that person has committed a felony, misdemeanor, or ordinance violation in the officer's presence.[22]

## C.  APPLYING THE DETENTION STANDARDS

Lewis contends that officers did not have reasonable suspicion to stop him or place him in handcuffs, and that his detention constituted an arrest without probable cause.  We disagree.

MCL 257.709(1)(a) prohibits a person from operating a motor vehicle with any "window application, reflective film, or nonreflective film upon or in the . . . side windows immediately adjacent to the driver or front passenger," subject to certain exceptions.  Here, Officer Gilbert testified that Lewis's side windows were tinted.  Accordingly, Officer Gilbert had reasonable suspicion that Lewis was violating MCL 257.709(1)(a) and was entitled to make an investigatory stop on that basis.

But the officers also had reasonable suspicion to believe that Lewis was engaged in drug trafficking.  Officer Gilbert testified that, while he was observing Lewis, Lewis met with two known drug-dealers and then began to make a series of very short stops.  Officer Gilbert testified that, in his experience, this behavior is consistent with drug trafficking.  Accordingly, Officer Gilbert had a reasonable and articulable suspicion that Lewis, an occupant of the vehicle, was engaged in illegal activity.

The officers were also entitled to detain Lewis during the stop.  Here, the initial traffic stop was lawful.  Officers briefly questioned Lewis and, during the questioning, Lewis consented to allow officers to search his car.  The officers had information that Lewis carried weapons and had a concealed pistol license.  The officers continued to detain Lewis in handcuffs while they searched his car.  We conclude that it was reasonable for officers to detain Lewis for the purposes of their own safety during the search, especially when officers had information that

---

[18] *Id.*

[19] *Arizona v Johnson*, 555 US 323, 327; 129 S Ct 781; 172 L Ed 2d 694 (2009).

[20] *People v Zuccarini*, 172 Mich App 11, 14; 431 NW2d 446 (1988).

[21] *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996).  See *People v MacLeod*, 254 Mich App 222, 227-228; 656 NW2d 844 (2002).

[22] MCL 764.15(1)(a).

Lewis was known to carry a handgun.[23]  Therefore, we conclude that the officers' detention of Lewis did not constitute an illegal arrest.

### III.  CONSENT TO SEARCH

### A.  STANDARD OF REVIEW

As discussed above, this Court reviews de novo whether police conduct violated the Fourth Amendment and reviews de novo a trial court's decision on a motion to suppress.[24]  We review for clear error the district court's findings of fact at a suppression hearing, including the validity of a defendant's consent to search.[25]  And we review de novo the trial court's ultimate decision on the motion.[26]

### B.  LEGAL STANDARDS

Both the United States and Michigan constitutions "guarantee the right of persons to be secure against unreasonable searches and seizures."[27]  To comply with this requirement, police officers must have a warrant to conduct a search or must establish that their conduct was "within one of the narrow, specific exceptions to the warrant requirement."[28]  If police officers obtain evidence while violating the Fourth Amendment, the evidence is generally inadmissible in criminal proceedings.[29]

The consent exception to the search warrant requirement allows officers to conduct a search "when consent is unequivocal, specific, and freely and intelligently given."[30]  The validity of a defendant's consent depends on the totality of the circumstances.[31]

---

[23] See *Zuccarini*, 172 Mich App at 14-15.

[24] *Hyde*, 285 Mich App at 438.

[25] *Farrow*, 461 Mich at 209; *People v Marsack*, 231 Mich App 364, 378; 586 NW2d 234 (1998).

[26] *Williams*, 472 Mich at 313.

[27] *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000).  See US Const, Am IV; Const 1963, art 1, § 11.

[28] *Kazmierczak*, 461 Mich at 418.

[29] *Id*.; *Mapp v Ohio*, 367 US 643, 655; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).

[30] *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001).  See *People v Kaigler*, 368 Mich 281, 294; 118 NW2d 406 (1962).

[31] *Frohriep*, 247 Mich App at 702.

## C. APPLYING THE SEARCH STANDARDS

Lewis contends that his consent was invalid because it was obtained after an illegal arrest and it was not freely and voluntarily given. We disagree.

An illegal seizure may invalidate the validity of a defendant's consent.[32] As discussed above, we reject Lewis's contention that his arrest was illegal. And a defendant's detention pursuant to an investigative stop does not, in and of itself, render a defendant's consent invalid.[33]

Here, there is no indication that Lewis's consent was not free and voluntary. Lewis was detained by police at the time that he gave his consent for officers to search his homes. Further, Deputy Pohl advised him that he had the right to refuse to consent to the search, and Lewis signed a consent form that stated that he was "informed of [his] constitutional right not to have a search made of the premises/vehicle hereinafter mentioned . . . and of my right to refuse to consent to such a search . . . ." The consent form also indicated that he was "giving this written permission to these deputies freely and voluntarily without any threats or promises having been made . . . ." In sum, we are not definitely and firmly convinced that the trial court made a mistake when it found that Lewis's consent to search his home was valid.

## IV. CONCLUSION

We conclude that Lewis was not subject to an illegal arrest when offers detained him on suspicion of drug trafficking and because he was driving a vehicle with tinted windows. We also conclude that Lewis freely and voluntarily consented to the search of his homes.

We affirm.

/s/ William C. Whitbeck
/s/ E. Thomas Fitzgerald
/s/ Christopher M. Murray

---

[32] *Florida v Royer*, 460 US 491, 507-508; 103 S Ct 1319; 75 L Ed 2d 229 (1983) (WHITE, J., with MARSHALL, POWELL, and STEPHENS, JJ.).

[33] *Williams*, 472 Mich at 318; *People v Acoff*, 220 Mich App 396, 400; 559 NW2d 103 (1996).