*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 20, 2022

Plaintiff-Appellee,

v

No. 355096
Genesee Circuit Court
LC No. 04-014983-FC

MARIO DARRELL COLLINS,

Defendant-Appellant.

Before: O'BRIEN, P.J., and STEPHENS and LETICA, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the circuit court's order denying his motion for relief from judgment. We affirm.

In 2005, defendant was convicted of first-degree murder, assault with intent to murder, carrying a concealed weapon, and felony-firearm. He was sentenced to life in prison without the possibility of parole for the murder conviction. As relevant to this appeal, defendant eventually moved for relief from judgment, claiming that his trial counsel in 2005 did not properly inform him of a plea offer made by the prosecutor.

The trial court held evidentiary hearings on defendant's motion. Defendant's trial counsel from the 2005 case, Frank Turnage, testified that in 2005, he informed defendant that the prosecution had offered to accept a plea of guilty to second-degree murder in exchange for a sentence with the minimum capped at 20 years. The prosecuting attorney for the 2005 case, Tamara Phillips, confirmed this offer. Defendant, however, testified that Turnage never conveyed this offer to him. The parties submitted various documentary evidence that each side asserted supported their claim about whether Turnage informed defendant of the plea offer. After considering all of the evidence, the trial court found Turnage to be credible and defendant to be

---

[1] *People v Collins*, unpublished order of the Court of Appeals, entered December 17, 2020 (Docket No. 355096).

not credible, concluding that Turnage had indeed informed defendant of the plea offer. Accordingly, the court denied defendant's motion for relief from judgment. This appeal followed.

This Court reviews for an abuse of discretion a trial court's decision on a motion for relief from judgment. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*. A trial court's factual findings supporting its decision on a motion for relief from judgment are reviewed for clear error. *People v Kasben*, 324 Mich App 1, 7; 919 NW2d 463 (2018). A factual finding is clearly erroneous if it leaves the Court with a definite and firm conviction that a mistake was made. *People v Steele*, 292 Mich App 308, 313; 806 NW2d 753 (2011). The ultimate question whether an attorney provided constitutionally deficient counsel is reviewed de novo. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008).

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). To prevail on an ineffective assistance claim, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

A defendant's right to the effective assistance of counsel includes the plea-bargaining process. *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), citing *Lafler v Cooper,* 566 US 156, 162; 132 S Ct 1376; 182 L Ed 2d 398 (2012). In this context, mistaken advice from trial counsel regarding the sentence a defendant could receive at trial may constitute deficient performance, *Douglas*, 496 Mich at 593, as may a counsel's failure to communicate a formal plea offer from the prosecution, *Missouri v Frye*, 566 US 134, 145; 132 S Ct 1399; 182 L Ed 2d 379 (2012).

Defendant contends that his trial counsel provided ineffective assistance because, in the plea-bargaining process, his counsel failed to properly advise him of a plea offer that he would have otherwise agreed to accept. In the court below, defendant testified that he never received a plea offer before his trial, whereas Turnage testified that he conveyed to defendant that the prosecutor proposed a plea of guilty to second-degree murder with the minimum sentence capped at 20 years. Both the prosecution and defendant submitted additional evidence to support their respective positions, but none of that evidence definitively confirmed or rebutted either defendant's or Turnage's testimony. As a result, and as noted by the trial court, the determination of whether Turnage communicated the prosecution's plea offer to defendant came down to a credibility contest. The trial court found Turnage credible, and defendant not credible. In finding defendant not credible, the court explained, "The Court observed [defendant's] testimony directly. It was unconvincing. His voice, tone, cadence, and mannerism, all of which the Court is allowed to consider, led the Court to question his believability." This Court gives deference to the credibility determinations of the trial court given its superior position to observe the witness. See *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999); *People v Mack*, 190 Mich App 7, 17; 475 NW2d 830 (1991). We see no reason to question the trial court's credibility determinations

in this case, and therefore conclude that the lower court's finding that Turnage communicated the prosecution's plea offer to defendant was not clearly erroneous, thereby defeating defendant's claim that his counsel provided ineffective assistance by failing to inform him of the prosecution's plea offer.

Defendant argues that the finding that Turnage conveyed a plea offer to defendant was inconsistent with evidence that defendant confessed to the police that he committed the homicide. Defendant reasons that he would have been eager to accept a plea offer after his confession because such an arrangement offered a way to mitigate the harsh sentence likely to result from a murder conviction based on his confession. However, defendant testified at the evidentiary hearings that he expected that he and his attorney would assert a self-defense theory, that he told the police that he acted in self-defense, and that he still believed that he acted in self-defense. "[T]he killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin*, 434 Mich 482, 502-503; 456 NW2d 10 (1990) (citations omitted). Accordingly, defendant's confession that he killed a person would not be inconsistent with defendant's self-defense theory, and in fact would be a necessary concession as part of that defense. In other words, defendant's frankness with investigators did not leave him without a reasonable means of trying to avoid a mandatory and nonparolable life sentence other than plea bargaining, and does not necessitate finding that Turnage was not credible when he testified that he conveyed the prosecution's plea offer to defendant.

In further arguing against the trial court's finding, defendant points out that Turnage's billing records do not list a June 8, 2005 letter Turnage sent to defendant in which Turnage stated, "The plea offer hasn't changed. The offer is Plea to Felony Firearm a two (2) year sentence and 2nd degree murder with a 20 year cap on minimum sentence," nor did the billing records show any meetings with defendant where a plea was discussed. At the evidentiary hearing, Turnage testified that he believed that the offer was presented to him in late May 2005, and that he presented it to defendant in a jail visit. The only reflection of a jail visit in Turnage's billing records was from December 2004, but Turnage explained that the pertinent billing document covered "extraordinary services," that the December 2004 billing line—"Discuss with client and investigator at jail"— reflected extraordinary services because the investigator was involved, and that all other jail visits would have been billed as a lump sum for ordinary trial preparation on a separate voucher. Thus, according to Turnage, the billing document presented at trial would not reflect Turnage's visit to the jail to convey a plea offer. In light of the nature of Turnage's billings, the fact that they did not document Turnage's communicating a plea offer to defendant does not demonstrate that the trial court clearly erred by finding that Turnage did so.

Next, defendant argues that even if the trial court properly found that Turnage conveyed a plea offer to him, Turnage nevertheless provided ineffective assistance because he conveyed the offer incorrectly. Defendant bases this argument on letters he received from Turnage and Phillips after he sent out letters to them in 2015 requesting information about what he had been offered as a plea bargain. Both responded with letters back to defendant. In Turnage's letter, he told defendant that the prosecution's offer was a minimum sentence capped at 20 years in exchange for a plea of guilty to second-degree murder, while in Phillips' letter, she stated that the offer was a plea to "second degree murder with a sentence cap on the maximum sentence."

Defendant argues that the difference in the letters, with Turnage reporting an offer of a 20-year cap on the minimum sentence and Phillips reporting that there was a cap on the "maximum sentence," suggests that defendant would have been confused in 2005. However, there is no evidence of confusion in 2005; defendant has always maintained that he did not receive any offer, and nothing suggests that Phillips personally interacted with defendant such that she could have told defendant something other than what Turnage told defendant.

Concerning whether the 2005 offer from the prosecution was consistent with the offer that Turnage conveyed to defendant, Phillips' testimony clarified that the offer included a cap on the "guideline" sentence, in other words, proposed a maximum term for the minimum sentence, rather than a cap on the actual maximum sentence. She further explained that her reference to the "maximum" was simply the vernacular she used in plea negotiations. She conceded that defendant may not have understood the term "maximum" in her 2015 letter to him the way that she meant it, and that she could have been more clear, but she believed that Turnage understood her communications.

Defendant protests that Phillips' letter to defendant describing a cap on the "maximum" was inconsistent with her trial testimony. However, as noted, Phillips explained that she used the term "maximum" in her letter and discussions in reference to the high end of the range for the *minimum* sentence, and the trial court credited this testimony. Further, there was no evidence that an offer with a cap on the actual maximum sentence was discussed between Phillips and Turnage, as Phillips consistently testified that her discussions with Turnage concerned a cap on the minimum sentence.

Defendant further argues that a 20-year cap on the maximum sentence makes sense because Turnage wanted a sentence closer to 15 years for manslaughter, and the victim's family and the prosecutor insisted on a murder conviction. However, there was no evidence, beyond Phillips' explained use of "maximum" when referring to a cap on the minimum, that the parties ever attempted to bargain over a limit on the actual maximum sentence.

For these reasons, the trial court's finding that Turnage accurately communicated the prosecution's plea offer to defendant was not clearly erroneous.

Defendant additionally argues that Turnage failed to provide advice to defendant regarding the plea that he was offered. This Court has explained that defense counsel must explain the range and consequences of available choices in sufficient detail to enable the defendant to make an intelligent and informed choice. *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994). Turnage testified that he had discussed possible pleas with defendant, including the offer of a 20-year cap on the minimum for second-degree murder, but that defendant was not receptive to any plea offer because he wished to claim self-defense. Turnage further stated that he discussed the case and possible defenses with defendant, including the requirements for claiming self-defense. He also informed defendant that, if the jury did not believe him, he would likely be convicted of first-degree, or possibly second-degree, murder. Turnage estimated that he discussed possible plea offers with defendant two or three times, but that defendant persisted with his desire to claim self-defense. This evidence supported that Turnage discussed the plea offer with defendant to an extent sufficient for defendant to make an informed decision.

-4-

In sum, defendant has not demonstrated that the trial court's finding that his trial counsel accurately conveyed the prosecutor's plea offer to him, and that he rejected it, was clear error. The trial court's denial of defendant's motion for relief from judgment was thus within the range of reasonable and principled outcomes. Defendant has not otherwise demonstrated that his trial counsel's performance was deficient during the plea-bargaining process.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens
/s/ Anica Letica