*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 5, 2023

Plaintiff-Appellee,

v

No. 359014
Berrien Circuit Court
LC No. 2020-002543-FC

DALE LYNN BEILMAN,

Defendant-Appellant.

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

Defendant faces charges of first-degree criminal sexual conduct, MCL 750.520b, second-degree criminal sexual conduct, MCL 750.520c, kidnapping, MCL 750.349, and possession of child sexually abusive material (CSAM), MCL 750.145c. In pretrial proceedings, the trial court denied defendant's motions to suppress CSAM-related evidence obtained through the seizure of his cell phone. The seizure occurred at defendant's home at around 12:20 a.m. after a police officer directed defendant to produce the phone and stated that no warrant was necessary. The prosecution argued and the trial court agreed that defendant consented to the warrantless seizure. Defendant appeals by leave granted.[1] We conclude that the officer engaged in an impermissible knock and talk and that defendant did not consent to the seizure of his phone. Furthermore, no exigent circumstances existed to justify the seizure. We thus hold that the police violated defendant's Fourth Amendment rights by seizing defendant's cell phone; consequently, the evidence discovered on the phone must be suppressed. In light of our ruling, it is unnecessary to address defendant's argument that the subsequent search of the cell phone's contents pursuant to an alleged faulty search warrant exceeded the scope of the warrant. We reverse and remand for further proceedings.

---

[1] This Court denied defendant's delayed application for leave to appeal. *People v Beilman*, unpublished order of the Court of Appeals, entered January 28, 2022 (Docket No. 359014). Our Supreme Court, in lieu of granting leave to appeal, remanded the case for consideration as on leave granted. *People v Beilman*, 977 NW2d 543 (2022).

## I. FACTUAL AND PROCEDURAL OVERVIEW

This case stems from a report by 12-year-old AN that defendant sexually assaulted her during visits to the home of her friend, defendant's daughter, which is where defendant resided. Multiple assaults were alleged to have occurred in defendant's home over a span of several months and included sexual contact and penetration. AN also claimed that defendant at times took photographs or videos of the sexual abuse with his cell phone. After the phone was seized absent a warrant and then searched by a police forensic examiner pursuant to a warrant, it was determined that there were no photographs or videos of AN on the phone. But CSAM was found on defendant's cell phone. Defendant moved to suppress the cell-phone evidence.

At the suppression hearing, Coloma Township Public Safety Officer Drew Wagner testified that during the day on July 21, 2020, he went to defendant's home after police had received a complaint that defendant committed criminal sexual conduct against a child. The officer stated that he did not provide defendant with any details but simply alerted him that an investigation into the complaint was underway. Officer Wagner later returned to defendant's home at approximately 12:20 a.m. on July 22, 2020. He testified that his goal in approaching and visiting defendant's home after midnight was to locate the cell phone and "take possession" of the phone. Officer Wagner also indicated that he went to defendant's house for the purpose of seeing whether defendant "would consent [the phone] over" before the officer "waste[d] anyone's time with the warrant process." Officer Wagner conceded, however, that he never asked defendant for his consent to seize the phone.

The trial court was presented with an audiotape of Officer Wagner's discussion with defendant and defendant's brother, who had walked up to the home just as the officer began speaking with defendant. We note that the conversation among the three men occurred on defendant's front porch. Our review of the audiotape reveals that Officer Wagner initiated the conversation with defendant by immediately stating that he needed to have defendant's cell phone. Officer Wagner informed defendant that he had to "confiscate" and "seize" the phone because it was evidence. The officer apologized for the inconvenience to defendant in losing his phone and told defendant that it would be returned to him as soon as possible. At that point, defendant's brother chimed in and asked Officer Wagner whether a warrant was required. Officer Wagner responded that no warrant was necessary because the phone was evidence.

The evidence established that defendant then went into his house, retrieved his cell phone, returned to the porch, and handed the phone over to the officer. Officer Wagner testified that defendant gave him the phone and stated, " 'Go ahead. I don't have anything to hide.' " The officer viewed this statement as consent to the seizure of the cell phone. On listening to the audiotape in court, Officer Wagner agreed that defendant actually stated, " 'I got nothing to hide. You can take it.' " This is consistent with our review of the audiotape.

After listening to more of the audiotape during the suppression hearing, Officer Wagner acknowledged that it sounded as though he and defendant spent some time scrolling through the cell phone. Officer Wagner added that he "didn't actually like search it or anything," and he could not recall any content that he may have viewed on the phone. Officer Wagner did not dispute that he told defendant that he still needed to take defendant's phone as evidence. The officer agreed that he held defendant's cell phone while they stood on the porch. Officer Wagner testified that

he planned to retain the phone until a warrant was procured to search the contents of the phone itself.

On defendant's motion to suppress the seizure of the cell phone, the parties presented their respective arguments, which focused on whether defendant had consented to the seizure of his phone and whether any consent was valid or coerced in light of the evidence regarding the encounter on defendant's front porch. The parties also disputed whether exigent circumstances existed that would excuse the lack of a warrant. The trial court denied the motion to suppress, concluding that defendant consented to the seizure of his phone and that the consent was freely, voluntarily, and intelligently given; therefore, no warrant was required and the seizure was constitutional. Subsequently, the trial court denied a second motion to suppress defendant filed in which he had argued that a forensic examiner's search of the phone's contents exceeded the scope of a warrant that was obtained after Officer Wagner had seized the phone. In light of our ruling that Officer Wagner's seizure of the phone was unconstitutional, we need not delve into the motion regarding the scope of the search of the phone's contents under the warrant.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

A trial court's findings at a suppression hearing are reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). Clear error occurs when the reviewing court is definitely and firmly convinced that the trial court made a mistake. *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018). "But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference; for this reason, we review de novo the trial court's ultimate ruling on the motion to suppress." *Williams*, 472 Mich at 313. This Court reviews de novo whether the Fourth Amendment was violated by the police and whether the exclusionary rule is applicable. *People v Anthony*, 327 Mich App 24, 32; 932 NW2d 202 (2019).

### B. GENERAL CONSTITUTIONAL PRINCIPLES

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. "The Fourth Amendment of the United States Constitution—like Article 1, § 11 of the 1963 Michigan Constitution,[2] whose protections have been construed as coextensive with its federal counterpart—protects against

---

[2] Const 1963, art 1, § 11, provides, in part:

> The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath or affirmation. . . . .

unreasonable searches and seizures." *People v Mead*, 503 Mich 205, 212; 931 NW2d 557 (2019) (citation omitted).

As reflected in the text of the Fourth Amendment, the touchstone of any Fourth Amendment analysis is reasonableness. *People v Hughes*, 506 Mich 512, 524; 958 NW2d 998 (2020). Although a search warrant is not always required before the police search or seize a person's personal effects, there exists a strong preference in favor of obtaining a warrant for purposes of conducting a search, and the general rule is that the police must secure a warrant in order for a search or seizure to be reasonable under the Fourth Amendment. *Id.* at 524-525.

### C. KNOCK AND TALK PRINCIPLES AND APPLICATION

When the police approach a home and perform a "knock and talk" within its proper scope, there is no Fourth Amendment search. *People v Frederick*, 500 Mich 228, 234; 85 NW2d 541 (2017). With respect to determining the proper scope of a knock and talk, it is necessary to consider the "implied license" that is granted in general to all kinds of peddlers, solicitors, and hawkers. *Id.* Accordingly, a police officer may approach a home and knock without a warrant precisely because that is no more than any private citizen would be entitled to do. *Id.* at 234-235. But a Fourth Amendment search occurs when the police go beyond the implied license and trespass on protected property for purposes of information-gathering. *Id.* at 237. The *Frederick* Court observed and ruled:

> [T]he scope of the implied license to approach a house and knock is time-sensitive. Just as there is no implied license to bring a drug-sniffing dog to someone's front porch, there is generally no implied license to knock at someone's door in the middle of the night. . . . This custom was apparent to the investigating officers in this case. KANET officers testified candidly that it would be inappropriate for Girl Scouts or other visitors to knock on the door in the middle of the night, but evidently the officers believed that they were not bound by these customs. But a knock and talk is not considered a governmental intrusion precisely because its contours are defined by what anyone may do. . . . When the officers stray beyond what any private citizen might do, they have strayed beyond the bounds of a permissible knock and talk; in other words, the officers are trespassing. [*Id.* at 239 (citations omitted).]

In this case, Officer Wagner presented at defendant's home after midnight and did so to gather information and evidence. We conclude that there was no implied license for the officer to "knock and talk" at 12:20 a.m. Accordingly, Officer Wagner engaged in an impermissible knock and talk, a conclusion with which the prosecution appears to agree. We note that although this issue was not preserved below, we find that plain error occurred that affected defendant's substantial rights and that the error seriously affected the fairness, integrity, and public reputation of the judicial proceedings independent of defendant's innocence. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

## D. CONSENT PRINCIPLES AND APPLICATION

A consent search, if voluntary, is an exception to the warrant requirement. *Frederick*, 500 Mich at 242. "The voluntariness question turns on whether a reasonable person would, under the totality of the circumstances, feel able to choose whether to consent." *Id.* When a defendant voluntarily consents to a search during an invalid knock and talk, the consent itself is deemed invalid despite its voluntary character unless it is sufficiently attenuated from the warrantless search. *Id.* There must be clear and positive testimony establishing consent, and the prosecution must show that the consent was unequivocal, specific, voluntary, and intelligently given, absent any actual or implied duress or coercion. *People v Farrow*, 461 Mich 202, 206; 600 NW2d 634 (1999). There is no valid consent if made after the police make false representations regarding a warrant or when a person simply responds to a police command. *Id.* at 207. The prosecutor's burden cannot be discharged by merely showing acquiescence to a claim of lawful authority. *Id.* at 208.

We hold that under the circumstances of this case, defendant did not consent to the seizure of his cell phone. Stated otherwise, the seizure of defendant's phone did not occur because defendant consented to the seizure. Rather, the phone was seized because Officer Wagner commanded defendant to turn it over, and defendant merely acquiesced to the officer's claim of lawful authority. This case does not concern the issue whether consent was given voluntarily, freely, and intelligently absent coercion or duress; instead, it involves a situation where no true consent was given. Officer Wagner did not ask defendant for consent to seize the cell phone. He simply directed and ordered defendant to produce the phone because it was evidence. The statements defendant made that the prosecution and the trial court characterize as establishing consent were expressed *after or as* defendant handed the phone over to Officer Wagner. Defendant's comments that he had nothing to hide and that the officer could take the phone seemed to be nothing more than a preemptive effort to deflect an appearance of guilt or a veiled attempt to perhaps change the officer's decision to seize the phone. But defendant's remarks did not amount to consent to seize the *already-seized* cell phone. As a final note, we are troubled by Officer Wagner's wholly inaccurate communication that a warrant was unnecessary because the phone was evidence of a possible crime. Also troubling is his testimony viewing the warrant process as wasting people's time.

## E. EXIGENT CIRCUMSTANCES AND APPLICATION

The Michigan Supreme Court has recognized that the risk of removal or destruction of evidence can constitute an exigent circumstance that constitutes an exception to the warrant requirement. *People v Blasius*, 435 Mich 573, 583; 459 NW2d 906 (1990). The *Blasius* Court defined the contours of the exigent-circumstances exception relative to concerns about the destruction or removal of evidence:

> We suggest the following criteria to guide the lower courts in assessing exigent circumstances in removal or destruction of evidence cases.
>
> First, the police may of course undertake no nonconsensual residential search or seizure without a showing of probable cause. Therefore, a court reviewing an entry without a warrant by the police on the basis of exigent circumstances

should first determine whether probable cause exists that the premises contain contraband or evidence of a crime.

Second, where officers seek to justify an entry without a warrant for the purpose of securing the premises pending a warrant, they must show the existence of an actual emergency and articulate specific and objective facts which reveal a necessity for immediate action.

In the context of a removal or destruction of evidence case, the most objective and compelling justification would be an actual observation of removal or destruction of evidence or such an attempt. Absent such compelling facts, the police must present facts indicating more than a mere possibility that there is a risk of the immediate destruction or removal of evidence. It seems self-evident that warrantless searches of a home should not be conducted by the police or validated by the courts every time evidence is merely threatened with destruction because police may rationally perceive possibilities of destruction whenever they think evidence of contraband is on the premises. To validate searches of a residence on the basis of hypothetical possibilities of destruction or removal would essentially nullify Fourth Amendment protections. However, in those cases where the police can show an objectively reasonable basis to believe the risk of destruction or removal of evidence is imminent—that immediate action is necessary before they can obtain a warrant—they may enter a residence for the limited purpose of securing the premises pending issuance of a search warrant. [*Id.* at 593-594 (quotation marks, citation, and brackets omitted).]

In this case, there was no evidence whatsoever that Officer Wagner seized the phone on the basis of exigent circumstances relative to concerns that defendant would destroy or remove the cell phone. The officer did not testify to actually observing attempted removal or destruction of the phone, nor did he testify to facts indicating a risk of immediate destruction or removal of the phone. Indeed, Officer Wagner did not even testify to a mere possibility that defendant would destroy or remove the phone. Moreover, Officer Wagner had already been to defendant's house hours earlier to inform defendant of the complaint and investigation; therefore, any assumed risk of removal or destruction of the phone had already existed and passed long before the officer approached the home after midnight. In short, we conclude that the prosecution did not show an objectively reasonable basis to believe that the risk of destruction or removal of the phone was imminent and that immediate action was necessary before a warrant could be procured.

F. EXCLUSIONARY RULE

Finally, we hold that application of the exclusionary rule is appropriate considering the flagrant disregard of proper "knock and talk" procedures and the false representation regarding the need for a warrant. In *People v Hammerlund*, 337 Mich App 598, 607; 977 NW2d 148 (2021), this Court explained:

The Fourth Amendment says nothing about excluding evidence at trial when its commands are violated; rather, the exclusionary rule is a prudential doctrine created by the United States Supreme Court to compel respect for the

prohibition against unreasonable searches and seizures. The sole purpose of the exclusionary rule is to deter future Fourth Amendment violations. Where suppression would fail to yield any appreciable deterrence, exclusion of the evidence is unwarranted. The deterrence benefits of exclusion vary with the culpability of a police officer's conduct. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs to society in excluding evidence of criminal wrongdoing. [Citations omitted.]

In this case, Officer Wagner exhibited deliberate, reckless, and grossly negligent disregard for Fourth Amendment rights. Accordingly, evidence found on defendant's unconstitutionally-seized cell phone shall be excluded at trial.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick