*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CLEMENTS/CALDWELL, Minors.

UNPUBLISHED
October 30, 2025
1:48 PM

No. 372245
Genesee Circuit Court
Family Division
LC No. 22-138458-NA

Before: SWARTZLE, P.J., and ACKERMAN and TREBILCOCK, JJ.

PER CURIAM.

Respondent-mother appeals the order terminating her parental rights to three of her children after then-15-year-old GC disclosed that her step-father (respondent's husband) sexually abused her for years and because the children were subject to severe physically abusive discipline. Citing testimony that respondent coerced a sibling into recanting similar accusations and persuaded the children not to cooperate with investigations—effectively condemning GC to future sexual abuse—the trial court terminated respondent's parental rights. We affirm.

## I. BACKGROUND

Respondent has a long history of Children's Protective Services (CPS) investigations for complaints ranging from physical abuse and neglect to sexual abuse. She has eight children, three of whom—GC, WC, and CC—are subject to this case.[1] The children gave conflicting testimony about respondent's treatment of them.

Some children described respondent's historic disparate and abusive treatment of them, ranging from beating children with hangers to forcing them to eat food with condensed milk mashed into it. Others, however, maintained that no such abuse or disparate treatment had

---

[1] The other five children were adults by the time of the termination hearing, but two of the adult children still lived with respondent at that time. Respondent's husband was also a named respondent in this matter, but he is not a party to this appeal.

-1-

occurred. The children were also split between those who testified that respondent constantly ordered or frightened them into lying to investigators and those who testified that they were never instructed to lie. Significant to this case, GC's older (and now adult) sibling testified that in response to hearing from the sibling that respondent's husband sexually abused her, respondent became angry, threatened the sibling, and then forced the sibling to recant the accusations and ultimately lie to investigators.

GC testified that she first disclosed that respondent's husband had abused her to someone other than respondent because she did not expect respondent to believe her. There was no evidence that respondent witnessed GC's sexual abuse, and respondent submitted the results of two voluntary polygraph examinations, one of which supported her assertion that she did not know about her husband's sexual assaults of GC. The polygraph evidence, however, was admitted for the sole purpose of the trial court's best-interest inquiry. Moreover, the trial court heard testimony from several of respondent's children that they were either instructed to lie or induced to lie because respondent frightened or threatened them.

As with the other testimony, the children were evenly split between those who loved respondent and felt safe with her and those who were afraid and resentful. Despite the allegations of sexual abuse and respondent's reactions to the allegations, GC, who was almost 18 at the time of the termination hearing, expressed a desire to return to respondent's care. The other two children at issue resided with relatives, adamantly wished nothing further to do with respondent, and did not want to be returned to her home.

Ultimately, the trial court terminated respondent's parental rights to GC, WC, and CC based on her failure to protect them from future abuse and found that the termination was in the children's best interests. Respondent now appeals.

## II. STATUTORY GROUNDS FOR TERMINATION

We begin with the statutory grounds supporting termination of respondent's parental rights. On appeal, respondent contends the trial court erred in failing to credit her polygraph evidence, resolving conflicting testimony against her favor, and ultimately concluding clear and convincing evidence demonstrated that she failed to prevent and protect her children from abuse. We cannot agree.

## A. STANDARD OF REVIEW

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court's findings are reviewed for clear error. *Id*. Under the clearly erroneous standard, a trial court's decision must be "more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). This Court may not substitute its judgment for that of the trial court by making independent factual findings that the trial court could have, but did not, make, especially if the "factual issue involves the credibility of the witnesses whose testimony is in conflict." *People v Farrow*, 461 Mich 202, 208-209; 600 NW2d 634 (1999) (quotation marks and citation omitted). Evidence is not necessarily clear and convincing for being uncontroverted, but

it may also be clear and convincing despite being contradicted. *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995).

## B. PRELIMINARY ISSUES

Respondent raises two preliminary issues with the trial court's statutory-grounds conclusion.

First, respondent argues that the trial court erroneously decided not to credit evidence concerning her polygraph examination, which, she contends, demonstrates that she was not lying about her knowledge of GC's sexual abuse and that she did not coach the children. This argument fails for multiple reasons. First, respondent stipulated to the trial court only considering the polygraph evidence for best-interest findings, so she cannot now rely on it regarding statutory grounds. *Farm Credit Services of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 683-684; 591 NW2d 438 (1998). Second, there remains "no consensus that polygraph evidence is reliable." *Sullivan v State*, 328 Mich App 74, 84; 935 NW2d 413 (2019) (quotation marks and citation omitted). Finally, the trial court did not find that respondent *actually knew* her husband was abusing GC and rather found that, when she was told about her husband's sexual abuse of GC's sibling, respondent disbelieved the sibling and covered up the abuse. The trial court, therefore, did not err by setting aside the polygraph evidence when considering the statutory grounds for termination.

Second, respondent contends that the trial court erred by crediting some testimony of the children over other children's more favorable testimony and not crediting testimony from third parties who did not witness abuse. There is no dispute that the children maintained different views of their mother and her conduct. But because the conflict existed, the trial court "necessarily had to make credibility determinations given the conflicting evidence." *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 41; 896 NW2d 39 (2016); accord *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008).

Respondent also points to evidence from which the trial court arguably *could* have supported a different conclusion, like crediting the children who stated they lied to investigators because of intimidation or fear because outsiders to the family did not notice anything amiss. If, however, respondent was frightening or ordering the children into silence as those children testified, that outsiders failed to discover the concealed abuse is not surprising. But more fundamentally, her different-conclusion assertion invites us to make impermissible independent factual findings and our own assessment of the relative credibility of the witnesses. *Farrow*, 461 Mich at 209. "[T]he trial court's findings are not clearly erroneous because the evidence supports them, and where testimony conflicts, we must afford deference to the trial court's superior ability to judge the credibility of the witnesses who appear before it." *Patel v Patel*, 324 Mich App 631, 635; 922 NW2d 647 (2018). We, therefore, find no clear error in the trial court's resolution of the conflict in favor of the children who described respondent engaging in abuse and manipulation.

## C. STATUTORY GROUND

With these antecedent issues resolved, we turn to the trial court's termination of parental rights under MCL 712A.19b(3)(b)(*ii*).[2] Before terminating a parent's rights under that provision, a trial court must find, by clear and convincing evidence, that: (1) a "child or a sibling of the child has suffered . . . sexual abuse"; (2) the parent "had the opportunity to prevent the . . . sexual abuse" and "failed to do so"; and (3) that there "is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home." On appeal, respondent does not challenge whether GC was sexually abused, that GC is either "the child" or "a sibling of the child" who was abused, or that the other two children were GC's siblings. Instead, she only contends there lacked clear and convincing evidence that she had the opportunity to prevent that abuse.

Ample evidence supports the trial court's conclusion that respondent could have prevented her husband's sexual abuse of GC. Namely, the trial court resolved the witnesses' conflicting testimony by crediting those who stated respondent affirmatively acted to conceal her husband's sexual abuse of GC's sibling and should have believed the sibling—even GC admitted that she did not think respondent would believe her. That no outsiders noticed the abuse, as respondent insists, does not persuade us, for that would be the expected outcome of actively covering up the abuse.

The record also demonstrates that all three children would likely be harmed if returned to respondent's care. Respondent lived with two of the children who unambiguously denied any abuse or manipulation, whom the trial court implicitly found not credible. With that, we see no reversible error in the trial court's conclusion that respondent's home would be an unsupportive environment in which the children's concerns about mistreatment would be disbelieved, thus increasing the likelihood that such injury or abuse would occur. A finding to the contrary would surround the children with adults who would prevent any future injuries or abuses from being discovered, thus creating an environment where injury and abuse could be facilitated. And, given the trial court's credibility assessment, to which we must defer, respondent was abusive and might inflict serious punishments on the children for taking sides against the family.

For these reasons, clear and convincing evidence supported the trial court's statutory-grounds determination under MCL 712A.19b(3)(b)(*ii*).

## III. BEST INTERESTS

Respondent next argues that the record fails to demonstrate that the trial court conducted the required best-interest analysis because it did not expressly address the placement of each child with a relative. Again, we disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. When determining a child's best interests, the trial court may rely on the entire record and consider the child's bond to the parent; the parent's parenting ability; the child's

---

[2] Because that is the sole factor cited by the trial court supporting its termination finding, we do not do not consider whether it could have found any other alleged statutory grounds.

need for permanency, stability, and finality; the child's age; inappropriate parenting techniques; and continued involvement in domestic violence. *In re Sanborn*, 337 Mich App 252, 276-277; 976 NW2d 44 (2021). Additionally, the court may consider the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 10. A child's "placement with a relative weighs against termination, but that fact is not dispositive." *Id*. at ___; slip op at 11. "Furthermore, the court *may* utilize the factors provided in MCL 722.23." *In re Medina*, 317 Mich App 219, 238; 894 NW2d 653 (2016) (quotation marks and citation omitted).

If a minor child is in a relative placement, then the trial court must explicitly address whether termination is appropriate in light of the relative placement. *In re Olive/Metts*, 297 Mich App at 43. When conducting this analysis, the trial court must treat the best interests of each child individually. *In re White*, 303 Mich App 701, 715-716; 846 NW2d 61 (2014). "A trial court's failure to explicitly address whether termination is appropriate in light of the [child's] placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts*, 297 Mich App at 43.

Start with the uncontroverted conclusion that the three children at issue were all placed with a relative at the time of the termination hearing. Although GC was placed in a residential treatment facility, she was also placed with her father, who is a "relative" under MCL 712a.13a(1)(j)(*i*). *In re Boshell/Shelton*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371973); slip op at 10. So too placed was the middle child—even though that man was not the child's legal father under a provision in his divorce judgment, he is an adult with "a strong positive emotional tie or role on the child's life," especially given the child's self-described "extremely good" relationship with him. Coupled with the fact that he is listed on the birth certificate as the father of the middle child, he qualifies as a "relative" under MCL 712A.13a(1)(j)(*ii*). See *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 5. The youngest child was placed with his aunt, who would also be a "relative" as an adult related to him within the fifth degree. See *In re Boshell/Shelton*, ___ Mich App at ___; slip op at 10; MCL 710.22(y).

The trial court then made references to these relative placements when it considered the child-custody best-interest factors and expressly cited the rule providing that relative placement weighs against termination. Although it did not expressly detail its analysis of each child's placement with a relative, the trial court noted during its consideration of other factors that "the children expressed a preference to remain in their placement, but for [GC] who wished to be home with her mother." The trial court was plainly aware of the placements with relatives and the requirement to consider those placements when making its decision. Findings of fact are sufficient if it "appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015) (quotation marks and citation omitted). On this record, we see no need for a "further explanation" as respondent suggests, and are otherwise not left with a definite and firm conviction that the trial court made a mistake when it found that the termination of respondent's parental rights was in the best interests of the children.

## IV.    CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman
/s/ Christopher M. Trebilcock