*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

JAVARIAN CHANDLER,

    Defendant-Appellant.

FOR PUBLICATION
June 27, 2024
9:10 a.m.

No. 368736
Wayne Circuit Court
LC No. 23-003498-01-FH

Before: BORRELLO, P.J., and SWARTZLE and YOUNG, JJ.

YOUNG, J.

Javarian Chandler appeals by leave granted[1] an order denying his motion to suppress evidence seized during a search of his bedroom. We hold that a warrantless search of a probationer's property without reasonable suspicion, or a court order signed by the probationer expressly waiving Fourth Amendment protections, is unconstitutional. We vacate and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The search at issue was performed by Detroit police officers and a probation agent as part of Chandler's conditions of probation. We turn to those terms first.

## A. CHANDLER'S TERMS OF PROBATION

At the time Chandler's room was searched, he was on probation. When Chandler was sentenced to that term of probation, the trial court stated on the record at sentencing the conditions of his probation. These conditions included that Chandler would need to "submit to a search of [his] person[] [and] property[,] including but not limited to [his] vehicle, residence[,] and computer

---

[1] *People v Javarian Chandler*, unpublished order of the Court of Appeals, entered December 27, 2023 (Docket No. 368736).

without the need of a search warrant if the probation officer has reasonable cause to believe that [he had] items which violate the conditions of probation."

The written order that followed stated a different condition. The order stated that Chandler must "submit to a search of [his] person and property," without any language requiring reasonable cause. The written order contained the same "Defendant's Acknowledgment" section found on the SCAO, Form MC 243 (Sept 2022), p 3:

**DEFENDANT'S ACKNOWLEDGMENT**

I have read or heard the order of probation and have received a copy. I understand and agree to comply with this order. I also understand that federal and/or state law may prohibit me from possessing or purchasing ammunition or a firearm (including a rifle, pistol, or revolver) if the court found I represent a credible threat to the physical safety of a named person and/or explicitly prohibited (in item 10) the use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury to that named person.

Date                                    Defendant signature

Like the example above, Chandler never signed or dated the acknowledgment.

## B. CIRCUMSTANCES OF THE SEARCH

Wayne County Parole and Probation Officer Wayne Thomas II made a list every week of probationers and parolees and did a compliance check at their homes. On May 17, 2023, Chandler was on Officer Thomas' compliance check list. Officer Thomas had never previously met Chandler.

Officer Thomas and three Detroit Police officers went to the house listed on Chandler's paperwork. The house was owned by Chandler's cousin. Chandler's cousin and Chandler's mother answered the door when police arrived. Chandler was not home. Chandler's cousin initially stated that Chandler did not reside there. Both Chandler's cousin and mother were "kind of tentative at first." Once Officer Thomas advised Chandler's cousin and mother that a search was a condition of Chandler's parole, Chandler's cousin allowed entry.

In the room identified as Chandler's, officers found a loaded handgun. Chandler was not permitted to possess any weapons, and he was subsequently charged with felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, as a fourth-offense habitual offender, MCL 769.12. Chandler filed a motion to suppress the weapon recovered in the search. The trial court denied that motion, and this interlocutory appeal followed.

## II. ANALYSIS

Concerning Chandler's motion to suppress, defense counsel argued that a warrantless search of Chandler's property was permissible only "if the probation officer has reasonable cause to believe that [he had] items which violate the conditions of probation." Defense counsel asserted, given that the agent had neither met Chandler nor received any reports that Chandler had violated

probation, the warrantless search was done without reasonable suspicion, and thus violated the conditions of Chandler's probation.

The prosecutor did not dispute the lack of reasonable suspicion. Instead, the prosecutor argued that the search was made after consent was given by the homeowner. Defense counsel replied that Chandler's cousin did not have authority to give consent to search Chandler's bedroom.

As stated, the trial court denied the motion to suppress. The trial court found the search was performed within the limits of the court's *written* order, observing that the order did not say "anything about reasonable or anything," so reasonable suspicion was not required. The trial court also agreed with the prosecutor that the homeowner gave permission to enter. We address each rationale in turn.

### A. IT IS UNCONSTITUTIONAL TO SEARCH THE RESIDENCE OF A PROBATIONER WITHOUT REASONABLE SUSPICION OR A SIGNED WAIVER OF PROBATIONER'S FOURTH AMENDMENT RIGHTS

On appeal, Chandler argues first that the trial court's order denying his motion to suppress evidence seized during the search of his bedroom should be vacated because the search was unconstitutional. We agree.

We review de novo "a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014). "The trial court's findings of fact from a suppression hearing are reviewed for clear error, according deference to the trial court's determination." *Id*. "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (citation omitted). "Any ancillary questions of law relevant to the motion to suppress are also reviewed de novo." *Id*.

Both Article 1, § 11, of Michigan's 1963 Constitution and the Fourth Amendment of the United States Constitution protect against unreasonable searches and seizures. Const 1963, art 1, § 11; US Const, Am IV. The Fourth Amendment of the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

The Michigan Constitution states: "The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures." Const 1963, art 1, § 11. "Therefore, a search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Mahdi*, 317 Mich App 446, 457-458; 894 NW2d 732 (2016) (quotation marks and citation omitted).

"In general, searches conducted without both a warrant and probable cause to believe evidence of wrongdoing might be located at the place searched are unreasonable per se." *Id*. at

458 (citation omitted). Further, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v Gant*, 556 US 332, 338; 129 S Ct 1710; 173 L Ed 2d 485 (2009), citing *Katz v United States*, 389 US 347, 357; 88 S Ct 507; 19 L Ed 2d 576 (1967). The Supreme Court has articulated one of those exceptions, or "special needs," is supervision of probationers. *Griffin v Wisconsin*, 483 US 868, 875; 107 S Ct 3164; 97 L Ed 2d 709 (1987).

States are permitted to infringe on a probationer's privacy in ways that would otherwise be considered unconstitutional because the special needs of a probation system "make the warrant requirement impracticable and justify replacement of the standard of probable cause by 'reasonable grounds.' " *Id*. at 876. The Supreme Court opined that a warrant requirement to search a probationer "would interfere to an appreciable degree with the probation system" by making a magistrate, rather than the probation officer, the judge of how closely a probationer needs to be supervised. *Id*.

Probationers,[2] however, do not forgo their Fourth Amendment rights in full. The *Griffin* court held that "the special needs of Wisconsin's probation system make the warrant requirement impracticable *and justify the replacement of the standard of probable cause by* '*reasonable grounds*.' " *Griffin*, 483 US at 876 (emphasis added). In even more recent United States Supreme Court precedent, both a signed, written waiver of Fourth Amendment protections *and* reasonable suspicion were present.

Specifically, in *United States v Knights*, 534 US 112, 118; 122 S Ct 587; 151 L Ed 2d 497 (2001), the Supreme Court held that a probation search condition was a "salient circumstance" that must be considered when examining whether a person's Fourth Amendment rights were violated. Knights was a probationer subject to searches without reasonable cause pursuant to his signed probation order. *Id*. at 114. The Supreme Court determined a search of Knights's property, performed after police officers suspected his involvement in another crime, was reasonable under the totality of the circumstances because Knights signed his probation order and the officers had reasonable suspicion he had participated in criminal activity. *Id*. at 118-119. The Supreme Court did not address whether a suspicionless search violated the Fourth Amendment because reasonable suspicion was present. *Id*. at 120 n 6.

In this Court's precedent, a waiver of Fourth Amendment protections may be a condition of parole if the person on probation gave their consent to the same and "the waiver is reasonably tailored to a defendant's rehabilitation." *People v Hellenthal*, 186 Mich App 484, 486; 465 NW2d

---

[2] We do not consider whether, without a properly executed order of probation, Chandler can properly be considered a "probationer" at all. This issue was not raised below and we find that Chandler is entitled to the relief he seeks without reaching this issue. Therefore, it remains an open question whether individuals on probation can be searched *with* reasonable suspicion but an improperly executed Order of Probation. Here, because the search had neither a properly executed order nor reasonable suspicion, we need not reach this question.

329 (1990).[3] The *Hellenthal* Court recognized that a person on probation can give their consent[4] in return for "more lenient treatment." *Id.*

In their brief filed on the eve of oral argument, the prosecutor acknowledges *Hellenthal*, *Griffin*, and *Knights*, all of which involve probationers, but instead asks this Court to extend *Samson v California*, a case about the rights of parolees, to this matter because Chandler was on probation for illegally carrying and possessing a weapon. *Samson v California,* 547 US 843; 126 S Ct 2193; 165 LEd2d 250 (2006). We decline to do so.

The United States Supreme Court placed great emphasis on whether a probationer or parolee knew of and accepted the diminished expectation of privacy. In *Samson*, as it was in *Knights*, there was a clear expression of the diminished rights and an acceptance of an "unambiguous search condition." *Samson*, 547 US at 852. Neither are present here. A warrantless search of a probationer's home is unconstitutional if not coupled with an express waiver from the probationer, or the presence of reasonable suspicion.

Chandler's probation order simply stated he was to submit to a search of his person and property. It did not include the requirement of reasonable cause as was stated at sentencing. "[A] court speaks through its written orders and judgments, not through its oral pronouncements." *People v Mysliwiec*, 315 Mich App 414, 418 n 2; 890 NW2d 691 (2016), quoting *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Using the totality-of-circumstances test from *Knights*, 534 US at 118, this Court takes note of the importance of the trial court's probation order as a salient circumstance. However, Chandler did not sign or date the probation order, and there is no indication that he was aware of its contents or consented to the same. In fact, at sentencing, Chandler was told that he would be subject to searches *if* reasonable cause or suspicion existed that he had violated the terms of probation or committed a crime. As a result, we conclude that the warrantless search of Chandler's bedroom violated Chandler's constitutional rights under

---

[3] *Hellenthal* was initially released as an unpublished decision on August 16, 1990, but in response to a publication request, the opinion was published on October 22, 1990. See Docket No. 116287. *Hellenthal* is not binding on this Court, as it was not published on or after November 1, 1990. See MCR 7.215(J)(1). However, a case published by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2). See also *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019) (stating that although this Court is "not 'strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990,' those opinions are nonetheless 'considered to be precedent and entitled to significantly greater deference than are unpublished cases' ") (citation omitted).

[4] Unlike in *Knights*, it is not clear from *Hellenthal* whether Hellenthal had signed the probation order at issue. However, we assume *arguendo* that Hellenthal had signed the probation order because Hellenthal's consent to all conditions of probation was not questioned.

the Fourth Amendment. Barring any other Fourth Amendment exception to the warrant requirement, the fruits of this search should have been suppressed.[5]

## B. A WARRANTLESS SEARCH CONDUCTED WITH FREE AND VOLUNTARY CONSENT IS PERMISSIBLE

Chandler posits that the search was also not a valid consent search because the prosecution failed to meet its burden to show that his cousin properly consented to the search. In the trial court, defense counsel argued that Chandler's cousin did not have the authority to grant a search of Chandler's bedroom. Defense counsel also argued that Chandler's cousin did not consent freely or voluntarily.

### 1. WAS IT REASONABLE TO BELIEVE THAT CHANDLER'S COUSIN, THE HOMEOWNER, HAD COMMON AUTHORITY OVER CHANDLER'S ROOM?

The record reflects that Chandler's cousin, the homeowner, ultimately gave permission to the probation agent and police officers to search Chandler's bedroom. In *Illinois v Rodriguez*, 497 US 177, 181; 110 S Ct 2793; 111 L Ed 2d 148 (1990), the Supreme Court held that consent can be obtained from either "the individual whose property is searched or from a third party who possesses common authority over the premises." "Common authority" derives from joint access or control, and the belief that one has common authority must be reasonable. *People v Goforth*, 222 Mich App 306, 312; 564 NW2d 526 (1997) (internal citations omitted). While defense counsel is correct that *Goforth* is a case involving whether a parent can consent to the search of their child's room, its analysis involved factors that are present regardless of the familial relationship (or lack thereof) present between homeowner and room-occupier. Specifically, in *Goforth*, this Court observed the following non-exhaustive list of factors in considering whether someone had common authority: (1) "ownership of the house, or provision of or access to the living quarters"; (2) "the defendant's failure to take steps to exclude others from his room"; (3) whether the area was used by others freely; and (4) entry into the room for services such as cleaning and laundry. *Id*. at 314-316.

Here, the record reflects that Chandler's cousin was the homeowner. The extent of his provision of the living quarters is less clear. We do not know, for example, whether Chandler paid rent or how regularly his cousin or mother entered his room. It appears from the record that Chandler's door was not locked and there is no testimony as to signage or any other attempts to exclude entry. And although the relationship between homeowner and renter appears to be familial, that does not in-and-of-itself mean that the transaction for room-and-board cannot be

---

[5] The prosecution argues that the exclusionary rule should not apply. Because the application of the exclusionary rule was not considered by the trial court, we decline to consider it now. We leave it to the trial court to query whether garnering assistance from several police officers based on a self-made list without support from signed court orders or reasonable suspicion, and proceeding as if one or both exist to obtain consent to search from a homeowner, isn't the very misconduct the exclusionary rule seeks to deter. See *People v Short*, 289 Mich App 538, 549; 797 NW2d 665 (2010) ("The purpose of the exclusionary rule is to deter police misconduct.") (citations omitted).

arms-length. Given how lacking the record is regarding this issue, we believe further development in the trial court is appropriate as to this question of consent. This inquiry should include whether the consent itself was "unequivocal, specific, and freely and intelligently given." *People v Frohiep*, 247 Mich App 692, 702; 637 NW2d 562 (2001); see also *People v Frederick*, 500 Mich 228, 242; 895 NW2d 541 (2017) ("Consent searches, *when voluntary*, are an exception to the warrant requirement.") (Emphasis added.).

## 2. WAS CONSENT UNEQUIVOCAL AND FREELY GIVEN?

Defense counsel argues that "even if Mr. Chandler's cousin had the apparent authority to give consent to search, the government still could not meet its burden to show the consent was free and voluntary, as he merely acquiesced to the officers' lawful claim of authority." Again, the record lacks necessary development on this issue and we remand to the trial court to consider the voluntariness of consent to the search of Chandler's room.

Whether consent to a search was voluntary "turns on whether a reasonable person would, under the totality of the circumstances, feel able to choose whether to consent." *Frederick*, 500 Mich at 242. See also *People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999) ("Whether consent to search is freely and voluntarily given is a question of fact based on an assessment of the totality of the circumstances.").

Chandler's cousin was not a witness at the preliminary examination, so we do not have much in the way of a record to review this issue. What we do have, however, indicates there is at least an open question about the voluntariness of the cousin's consent. At the preliminary examination, Officer Thomas testified that Chandler's cousin and his mother were "tentative." He also testified that Chandler's cousin allowed entry only after Officer Thomas explained the check was a condition of Chandler's probation. As we already established, a warrantless search pursuant to an order of probation is only valid where there is reasonable suspicion or a clear waiver of Fourth Amendment protections, both of which this search lacked.

Nevertheless, given the dearth of the record on this issue and the inherently factual inquiry involved, whether representation of the unconstitutional order here sufficed to undermine the voluntariness of the cousin's consent is an issue that we leave first to the trial court's consideration. In guiding the trial court on remand, we find our Supreme Court's decision in *People v Farrow*, 461 Mich 202; 600 NW2d 634 (1999), analogous and possibly applicable depending on what may be revealed with further factual development of this issue.

*Farrow* ruled that consent to a search was involuntary where the defendant "allowed entry because of a blank Search Warrant that he saw and in compliance with what he reasonably believed to be a lawful order of the court." *Id*. at 205. "Thus, anything that occurred after the [d]efendant saw the Warrant was effected by the display of the Warrant by the detective and [the d]efendant's conclusions therefrom[,] including his reasonable belief that there was a valid document to penetrate his home." *Id*. at 206. The Court reasoned:

> The issue thus presented is whether a search can be justified as lawful on the basis of consent when that "consent" has been given only after the official

conducting the search has asserted that he possesses a warrant. We hold that there can be no consent under such circumstances.

When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.

When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent. [*Id*. at 207-208 (citation omitted).]

Similar to the defendant in *Farrow*, Chandler's cousin—depending on his reasonable belief at the time—was arguably coerced to consent to the search when told it was a lawful condition of Chandler's parole. As discussed, this representation, with no Fourth Amendment waiver or reasonable suspicion present here, was unconstitutional. And like the officer's erroneous claim of authority under a blank warrant in *Farrow*, the probation officer's claim of authority here under the unconstitutional order effectively announced that Chandler's cousin had no right to resist the search. Ultimately, the prosecution has not been given an opportunity to meet its burden to establish consent where it appears Chandler's cousin merely acquiesced to the probation officer's claim of lawful authority to conduct the search under Chandler's probation conditions.

## III. CONCLUSION

A warrantless search of a probationer's property, without reasonable suspicion or a signed waiver of Fourth Amendment protections pursuant to an order of probation, is unconstitutional. Given that the record is undeveloped as to whether Chandler's cousin had "common authority" to consent to the search of Chandler's room and whether that consent was voluntary, we deem the best approach is to remand this matter to the trial court. We vacate the trial court's order and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle